URI DALLAL
THE DALLAL FIRM, PC
2500 Plaza 5
Harborside Financial Center
Jersey City, NJ 08837
Tel:     732 650 1551
Fax:    347 514 9995
uri@dallalfirm.com

Attorneys for Plaintiff  DGL Group, Ltd.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DGL Group, Ltd.,<br><br>                    Plaintiff,<br><br><br>v.<br><br> Andrew Warner,<br><br><br>                    Defendant. | Civil Action No. _____ |

## COMPLAINT

Plaintiff the DGL Group, Ltd., by and through their undersigned attorneys, bring this action against Defendant Andrew Warner and allege as follows:

## BACKGROUND

1.       In this action, Plaintiff the DGL Group, Ltd. (variously, "DGL" or "DGL Group") seeks compensatory, statutory, and punitive damages, in addition to injunctive and other

1

equitable relief (1) to prevent and restrain Defendant Andrew Warner (variously "Defendant" or "Warner"), DGL's former employee, from disclosing its confidential and proprietary information to third parties in violation of his contractual and common-law obligations to his former employer; (2) to prevent and restrain Defendant Andrew Warner from engaging in acts of unfair competition and misappropriation of trade secrets; and (3) for copyright and trademark violations.

## PARTIES

2.      DGL is a New York corporation with its principal place of business at 195 Raritan Center Parkway, Edison, New Jersey 08837.

3.      Defendant Andrew Warner is a resident of the State of New Jersey with an address of 53 Washington Street, Rumson, New Jersey 07760.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over Count One of this action pursuant to 17 U.S.C. § 501, et seq., as it alleges violations of the Copyright Act.

5.      This Court has original jurisdiction over Count Two of this action pursuant to 15 U.S.C. § 1125(a)(1), as it alleges violations of the Lanham Act.

6.      In addition, this Court has supplemental jurisdiction over Counts Three through Eleven of this action pursuant to 28 U.S.C. § 1367(a) in that the claims asserted therein are so related to the claims set forth in Counts One through Three that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Jurisdiction over the person of Defendant is vested in this Court because he lives, worked and, on information and belief, continues to work within the State of New Jersey.

8.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 in that the claims and causes of action alleged herein arose in this District.

## STATEMENT OF FACTS

**The Parties**

9.      DGL's wide range of innovative, affordable, and quality consumer electronics and related accessories can be found on the shelves websites of the biggest retail chains in the United States and on the largest online marketplaces in the world.

10.     Since as early as 2008, DGL has been in business of selling consumer electronics and related accessories.

**DGL's Confidential and Proprietary Information**

11.     Of significant importance to DGL's business is DGL's ability to distinguish its products from those of its competitors in highly competitive consumer electronics and accessories markets. Product packaging, design, artwork and concepts are highly guarded pieces of information that are the primary forces behind DGL's differentiation from its competitors.

12.     DGL's designs, concepts, artwork, marks, packaging designs, printing specifications, manufacturing capacities and capabilities, and costs are at all times considered, and treated as, highly confidential within DGL and not shared with anyone outside the DGL.

13.     DGL has developed and maintained the confidential and proprietary information described in Paragraphs 11 and 12 through the expenditure of considerable time, effort, and expense. This information has a substantial competitive value to DGL.

14.     In addition to the time, effort, and expense DGL spent to develop the confidential and proprietary information described in Paragraphs 11 and 12, DGL has also spent significant time, effort, and expense to develop relationships with its customers, to learn their particular needs, specifications, and requirements, to develop substantial contacts and goodwill with them, and to design, market, and sell its products and services to them.

15.     The foregoing confidential and proprietary information is neither generally known nor readily ascertainable by proper means from publicly available sources, is directly related to and used by DGL's business, and provides DGL with a competitive advantage over those who do not have this information.

16.     The possession of DGL's confidential and proprietary information described in Paragraphs 11, 12, and 14 would give competitors, particularly other consumer electronics and accessories manufacturers,  an unfair economic advantage in developing, marketing, and selling competitive consumer electronics and accessories.

17.     As such, DGL makes reasonable and diligent efforts to protect and keep secret its confidential and proprietary information as described in Paragraphs 11, 12, and 14. These efforts include, but are not limited to, prohibiting access to the information by the general public, requiring employees to sign confidentiality agreements, instructing employees not to share the information with anyone, and restricting access to the information to DGL employees who agree to maintain its confidentiality and use the information only for the business benefit of DGL.

**Defendant's Employment with DGL**

18.    Defendant began his employment with DGL on or about March 10, 2014 as a designer and member of the product packaging development team.

19.    As a member of the product packaging development team, Defendant worked in DGL's design department.

20.    In his capacity as a designer and member of the product packaging development team, Defendant received disclosures from DGL of the highly confidential and proprietary information described in Paragraphs 11, 12, and 14 that were necessary to enable him to perform his job duties.

21.    As a designer and member of the product packaging development team, Defendant's responsibilities revolved around product and package development initiatives for DGL, including updating and revising new product and/or package design and development; competitive product and market analysis; discovery and application of best-value solutions relating to paper and printing; and ongoing commitment to and pursuit of the support of the team's innovation in design and concept.

22.    Defendant's  job duties also involved the taking creative direction and revising or editing designs of initial packaging concepts, flat illustrations, mechanical drawings, graphics, layouts, 3-D structures, and presentations as needed by the product packaging development team.

23.    Defendant's job duties also involved the receipt and editing of the work of other members of the product packaging development team, in addition to receiving the work of others for general review.

**Employment, Non-Disclosure and Proprietary Information Agreement ("Non-Disclosure Agreement")**

24.     Recognizing the importance and value of the highly confidential and proprietary information that DGL would share with Defendant so he could perform his job, on March 14, 2014, Defendant signed a Non-Disclosure Agreement, attached hereto as Exhibit A.

25.     By signing the Non-Disclosure Agreement, Defendant acknowledged that DGL was sharing with him confidential and proprietary information regarding its business activities and plans, including but not limited to formulas, billing, pricing, clients, vendors, memoranda, motes, reports, correspondents, and/or documents or information prepared by Defendant as a DGL employee and member of the product packaging development team.

26.     By signing the Non-Disclosure  Agreement, Defendant also agreed not to disclose the information listed in paragraphs 11, 12 and 14 above to a third party without first obtaining written consent of DGL.

27.     By signing the Non-Disclosure Agreement, Defendant also agreed not to copy, disclose, disseminate, share, utilize or otherwise transmit, in whole or in part, any information regarding products that DGL manufactures, sells, or markets other than in the course of his job duties at DGL, and, further that he would make no disclosure to any person, company or entity.

28.     By signing the Non-Disclosure Agreement, Defendant also agreed not to use the information listed in paragraphs 11, 12 and 14 above for competing with DGL or for any other purpose.

**Defendant's Separation from DGL**

29.     On or about July 3, 2014, Defendant was separated from DGL.

**Defendant's Breaches, Violations and Wrongful  Conduct**

30.     Upon information and belief, Defendant transferred confidential and proprietary information about DGL's products, designs, concepts, artwork, and product packaging from his DGL computer to his personal computer without the prior written consent of DGL.

31.     DGL's computers and the information stored in those computers are used in interstate commerce.

32.     Defendant's e-mailing of confidential information about DGL's proprietary and confidential information from his DGL computer to his personal computer without the prior written consent of DGL violated his Non-Disclosure Agreement.

33.     Upon information and belief, since at least as early as July 31, 2014, Defendant has operated a Behance.net account under the user name Warner Design. The account can be accessed at https://www.behance.net/warnerdesign. See Exhibit B.

34.     According to Behance.net's "About" page, Behance.net "remove[s] the barriers between talent & opportunity." See Exhibit F.

35.     Defendant uses the Behance.net account to post images of his purported work as a graphic and packaging designer in order to garner the interest of potential employers and the public at large. Defendant also lists his previous work experience. See Exhibit B.

36.     In or about September 2014, DGL discovered that Defendant has been using and disseminating DGL confidential and proprietary information, marks, logos, images, designs, and

packaging information, all of which are unique and original to DGL on his Behance.net public

account page,  https://www.behance.net/warnerdesign and

https://www.behance.net/gallery/19797473/Value-Branded-Product without the prior written

consent of DGL.  See Exhibits B and C.

37.     In or about September 2014, DGL also discovered that Defendant was infringing

DGL's copyrights in its original product packaging, original graphic designs, original product

illustrations and artistic photographs thereof (hereinafter "Original Works") by using

unauthorized exact copies of the Original Works on his Behance.net public account page,

https://www.behance.net/warnerdesign and https://www.behance.net/gallery/19797473/Value-

Branded-Product without the prior written consent of DGL.  See Exhibits B and C. See Exhibits

D and E depicting Original Works.

38.     In or about September 2014, DGL discovered that Defendant has been using and

disseminating DGL's marks, images, designs, packaging, logos, and other confidential

information, all of which are unique and original to DGL, on his Behance.net public account

page,  https://www.behance.net/warnerdesign and

https://www.behance.net/gallery/19797473/Value-Branded-Product without the prior written

consent of DGL.  See Exhibits B – E.

39.     Since Defendant was separated from DGL, he has no affiliation, connection or

association to DGL.

40.     Since Defendant was separated from DGL, DGL has not authorized, sponsored,

approved or endorsed Defendant's  products or services.

41.     Defendant, upon information and belief, has misappropriated DGL's  confidential

and proprietary information.

8

42. Since Defendant was separated from DGL, Defendant has been divulging DGL's confidential and proprietary information to third parties in violation of his statutory, contractual and common-law obligations to DGL.

43. As a result of Defendant's continuing violations and wrongful conduct, DGL has suffered and, unless Defendant is enjoined, will continue to suffer irreparable harm for which DGL has no adequate remedy at law.

## COUNT ONE

## Copyright Infringement

44. Plaintiff DGL repeats and realleges each and every allegation contained in Paragraphs 1-43 as though fully set forth herein.

45. DGL's Original Works depicted in Exhibits D and E are copyrightable under 17 U.S.C. § 102 and all rights, including all copyrights, in the Original Works are owned and controlled by DGL.

46. DGL has complied in all respects with the Copyright Act by making all necessary filings with the United States Copyright Office in order to secure the exclusive rights and privileges in and to the copyrights in the Original Works depicted in Exhibits D and E.

47. DGL has duly applied for Certificates of Copyright Registration for the Original Works.

48. At no time has DGL authorized Defendant to make any copy or use or adaptation of the Original Works depicted in Exhibits D and E outside the scope of his duties as an employee of DGL.

49.     Defendant has copied, adapted, used and displayed the Original Works depicted in Exhibits D and E on his commercial website, without the consent or authorization of DGL.

50.     As lawful owner of the copyrights, DGL is entitled to, interalia, "the exclusive rights to do and to authorize ... [the reproduction and use of] the copyrighted work ..." 17 U.S.C. § 106.

51.     Defendant's  unauthorized copying, adaptation, use and display of DGL's Original Works in interstate commerce constitute actual and threatened infringements of DGL copyrights.

52.     The foregoing conduct on the part of Defendant constitutes willful copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501, et seq.

53.     By reason of Defendant's copyright infringement and threatened continued copyright infringement, DGL has sustained and, if Defendant's  acts are not enjoined, will continue to sustain irreparable harm for which no adequate remedy at law exists.

## COUNT TWO

## Trademark Infringement, False Affiliation, and False Endorsement in Violation of 15 U.S.C.§ 1125(a)

54.     Plaintiff DGL repeats and realleges each and every allegation contained in Paragraphs 1-53 as though fully set forth herein.

55.     DGL has used the mark HYPE and related logos and graphic designs (collectively, the "HYPE Marks") in commerce throughout the United States, including in the State of New Jersey, continuously since 2008.

56.      DGL owns the trademark for HYPE in the United States (Registration No. 3734932), in addition to other applications for variations of the HYPE mark, including HYPE TAPP.

57.      DGL has used the HYPE Marks extensively in its marketing, advertising, and promotional materials and in its unique packaging materials (collectively, the "Packaging") for DGL products that are sold and/or distributed in interstate commerce.

58.      The HYPE Marks and Packaging are associated in the minds of the public with innovative, affordable, and quality consumer electronics and related accessories can be found on the shelves websites of the biggest retail chains in the United States and on the largest online marketplaces in the world.

59.      By virtue of DGL's continuous use in commerce of the HYPE Marks and Packaging in connection with its products, such products have long been well and favorably known.

60.      The HYPE Marks are distinctive and protectable as a trademarks.

61.      Defendant has copied, used and displayed identical copies of the HYPE Marks and Packaging on his commercial website, without the consent or authorization of DGL.

62.      Defendant is using unauthorized copies of the HYPE Marks and Packaging on his commercial website in connection with the advertising, marketing, promotion and sale of his services as a designer of packaging and products, as shown in the printed screens of Defendant's website.  See Exhibits B and C

63.      Since his separation from DGL on July 3, 2014, Defendant had no affiliation or association with, or connection to, DGL.

64.     DGL has never sponsored, approved or endorsed Defendant's products or services and has never authorized Defendant to promote himself or his services using the HYPE Marks and Packaging.

65.     Since his separation from DGL, Defendant has not participated in or contributed in any way to the creation of package designs and graphic art incorporating the HYPE Marks.

66.     Defendant's use of the HYPE Marks and Packaging on his commercial website is likely to cause confusion, mistake and/or deception as to his affiliation, connection, or association with and to DGL, and/or as to the sponsorship or approval of Defendant's services by DGL.

67.     Defendant's use of the HYPE Marks and Packaging on his commercial website gives the false impression that DGL is affiliated or associated with, or otherwise connected to, Defendant's confection packaging design services.

68.     Defendant's use of the HYPE Marks and Packaging on his commercial website gives the false impression that DGL sponsors, approves or endorses Defendant's design business.

69.     Defendant's use of the HYPE Marks and Packaging on his commercial website gives the false impression that Defendant continues to design packaging for DGL.

70.     The acts and activities of Defendant complained of herein constitute violations of the Lanham Act, 15 U.S.C. § 1125(a)(l).

71.     DGL has no adequate remedy at law, and the acts and activities of Defendant complained of herein cause irreparable harm to DGL.

## **COUNT THREE**

12

**False Advertising in Violation of 15 U.S.C.§ 1125(a)**

72.     Plaintiff DGL repeats and realleges each and every allegation contained in Paragraphs 1-71 as though fully set forth herein.

73.     Defendant is using unauthorized copies of the HYPE Marks and Packaging and unauthorized copies of photographs, illustrations and graphic images of DGL's packaging and products designed exclusively by DGL on his commercial website in connection with the advertising, marketing, promotion and sale of his services as a designer of packaging and, as shown in the printed screens of Defendant's website. See Exhibits B and C.

74.     Defendant's use of the HYPE Marks and Packaging on his commercial website gives the false impression that Defendant was the creator of the HYPE Marks and Packaging depicted in Exhibits D and E.

75.     The acts and activities of Defendant complained of herein constitute violations ofthe Lanham Act, 15 U.S.C. § 1125(a)(1).

76.     DGL has no adequate remedy at law, and the acts and activities of Defendant complained of herein cause irreparable harm to DGL.

**COUNT FIVE**

**Trademark Infringement and Unfair Competition in Violation of N.J.S.A. 56:4-1**

77.     Plaintiff DGL repeats and realleges each and every allegation contained in Paragraphs 1-76 as though fully set forth herein.

78.     The acts and activities of Defendant complained of herein constitute violations of N.J.S.A. 56:4-1.

79.     DGL has no adequate remedy at law, and the acts and activities of Defendant complained of herein cause irreparable harm to DGL.

## COUNT SIX

### Common-Law  Trademark Infringement and Unfair Competition

80.     Plaintiff DGL repeats and realleges each and every allegation contained in Paragraphs 1-79 as though fully set forth herein.

81.     The acts and activities of Defendant complained of herein constitute trademark infringement and unfair competition under the common law.

82.     DGL has no adequate remedy at law, and the acts and activities of Defendant complained of herein cause irreparable harm to DGL.

## COUNT SEVEN

### Breach of Non-Disclosure Agreement

83.     Plaintiff DGL repeats and realleges each and every allegation contained in Paragraphs 1-82 as though fully set forth herein.

84.     In his Non-Disclosure Agreement, Defendant agreed to post-employment covenants that he would not print, copy, use, or disclose DGL's confidential and proprietary information to third parties, among other covenants.

85.     Defendant has breached and will continue to breach the terms of the Non-Disclosure Agreement.

86.     DGL has suffered and will continue to suffer injury and irreparable harm as a result of Defendant's breach.

14

## COUNT EIGHT

### Misappropriation of Confidential and Proprietary Information

87.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-86 as though fully set forth herein.

88.     During his employment with DGL, Defendant acquired knowledge of DGL's confidential and proprietary information.

89.     While he was employed by DGL and after his employment ended, Defendant knowingly misappropriated, misused, and disclosed DGL's confidential and proprietary information for the purpose of benefiting himself and to the detriment and harm of DGL. See Exhibits B and C.

90.     The wrongful and improper use and disclosure of DGL's confidential and proprietary information is continuing and will inevitably continue so long as Defendant continues to place DGL's confidential and proprietary information on his on his Behance.net public account page,  https://www.behance.net/warnerdesign and https://www.behance.net/gallery/19797473/Value-Branded-Product.

91.     DGL has suffered and will continue to suffer injury and irreparable harm as a result of Defendant's breach.

## COUNT NINE

### Common-Law Misappropriation of Trade Secrets

92.     Plaintiff DGL repeats and realleges each and every allegation contained in Paragraphs 1-91as though fully set forth herein.

93.     DGL makes reasonable and diligent efforts to protect and keep secret its confidential and proprietary information, including but not limited to prohibiting access to the information by the general public, requiring employees to sign confidentiality agreements, instructing employees not to share the information with competitors, and restricting access to the information to DGL employees who have agreed to maintain its confidentiality and to use the information only for the business benefit of DGL.

94.     DGL's confidential and proprietary information (including photographs, design details and schematics, and production methods and techniques) is neither generally known nor readily ascertainable by proper means from publicly available sources, is directly related to and used by DGL's business, and provides DGL with a competitive advantage over those who do not have this information.

95.     Defendant's unauthorized use, disclosure, and dissemination of DGL artwork, and design details constitutes misappropriation of trade secrets under the common law.

96.     DGL has no adequate remedy at law, and the acts and activities of Defendant complained of herein cause irreparable harm to DGL.

## COUNT TEN

### Breach of Duty of Loyalty

97.     Plaintiff DGL repeats and realleges each and every allegation contained in Paragraphs 1-96 as though fully set forth herein.

98.     Defendant was an employee of DGL. As such, he owed a duty of loyalty to DGL not to take any actions contrary to DGL's interest while still in its employ.

99.     As a former employee of DGL, Defendant continues to owe DGL a duty of loyalty not to use or disclose DGL's confidential and proprietary information which he acquired while employed by DGL.

100.    Defendant breached his duty of loyalty to DGL by taking actions contrary to its interest while employed by DGL.

101.    Defendant also breached his duty of loyalty to DGL by using and disclosing DGL's confidential and proprietary information for the benefit of himself. See Exhibits B and C.

102.    As a result, DGL has suffered and will continue to suffer injury and irreparable harm as a result of Defendant's breach for which DGL has no adequate remedy at law.

## COUNT ELEVEN

### Violation of New Jersey's Computer-Related Offenses Act, N.J.S.A. 2A:38A-1et seg.

103.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-102 as though fully set forth herein.

104.    By virtue of the aforementioned conduct, Defendant violated N.J.S.A. 2A:38A-1 et seq., by purposefully and knowingly and without authorization taking DGL's data, including but not limited to DGL's electronic files, which contain photographs and graphic designs relating to DGL's business.

105.    By virtue of the aforementioned conduct, Defendant violated N.J.S.A 2A:38A-1 et seq., by purposefully and knowingly accessing DGL's computer network and recklessly obtaining DGL's data, including but not limited to DGL's electronic files, which contain photographs and graphic designs relating to DGL's business. See Exhibits D and E.

106.     As a result of the foregoing conduct, DGL has suffered and will continue to suffer injury and irreparable harm as a result of Defendant's breach.

**WHEREFORE**,  Plaintiff DGL Group, Ltd., being without adequate remedy at law, and being threatened with the continuance of serious and irreparable injury, demand judgment in their favor and against Defendant Andrew Warner for the following relief:

A.     That Defendant (as well as all persons and entities acting for or on his behalf, or in concert with him), be temporarily, preliminarily, and permanently restrained from, directly or indirectly:

1.   Making any use whatsoever of all Original Works for which DGL owns the copyright;

2.   Making any use whatsoever of the HYPE Marks and any other mark or name confusingly similar thereto, either as a mark or name or component of a mark or name, in connection with package design services or consumer electronics and accessories;

3.   Making any use whatsoever of all DGL product packaging, graphic designs, graphic images, product illustrations, and photographs, in connection with private label design services or related in any way to consumer electronics or accessories;

4.   Retaining, using, possessing, or disclosing to any person, or facilitating or assisting any person to use, the Confidential and Proprietary Information of DGL, including but not limited to the identities of its customers and the details of their needs; customer contact information; proposals in final and draft forms; forecasts; invoices; service orders; service information; profit margins on products; the cost to produce products; pricing structures; manufacturing capabilities and capacities; and package printing capabilities and capacities; and

5. Otherwise engaging in any activity in breach of Defendant's agreements with DGL; and

B. Deliver up to the Court for destruction all promotional, marketing, advertising and other materials, whether digitally stored or printed, which refer to the HYPE Marks and any other mark or name confusingly similar thereto, either as a mark or name or component of a mark or name, in connection with package design services or related to consumer electronics and accessories;

C. Immediately remove from his website the HYPE Marks and any other mark or name confusingly similar thereto, either as a mark or name or component of a mark or name, in connection with package design services or related to consumer electronics and accessories;

D. Immediately remove from his website all Original Works for which DGL owns the copyright and all photographs, illustrations and images of DGL packaging and designs;

E. Deliver up to the Court for destruction all promotional, marketing, advertising and other materials, whether digitally stored or printed, that contain any of the Original Works for which DGL owns the copyright and all photographs, illustrations and images;

F. DGL be awarded damages or Defendant's profits, or alternatively, at DGL's election, statutory damages, as a result Defendants infringements;

G. DGL be awarded compensatory damages in an amount to be determined at trial;

H. DGL be awarded punitive damages in an amount to be determined at trial;

I. Costs and disbursements of this action, including reasonable attorney's fees, costs of investigation, and expenses; and

J. Such other relief as the Court may deem equitable and just.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

/s/ Uri Dallal
URI DALLAL
THE DALLAL FIRM, PC
2500 Plaza 5
Harborside Financial Center
Jersey City, NJ 08837
Tel:    732 650 1551
Fax:    347 514 9995
uri@dallalfirm.com

Attorneys for Plaintiff DGL Group, Ltd.

DATED:  September 23, 2014

## <u>LOCAL RULE 11.2 CERTIFICATION</u>

The undersigned hereby certifies that this matter in controversy is not the subject of any other action pending in any court, arbitration, or administrative proceeding.

/s/ Uri Dallal_____
URI DALLAL
THE DALLAL FIRM, PC
2500 Plaza 5
Harborside Financial Center
Jersey City, NJ 08837
Tel:    732 650 1551
Fax:    347 514 9995
uri@dallalfirm.com

Attorneys for Plaintiff DGL Group, Ltd.

DATED:  September 23, 2014

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1

The undersigned  hereby  certifies, pursuant  to Local Civil  Rule 7.1, that  with respect to  the  matter   in  controversy  herein,  Plaintiff  does  not  have  any  parent corporation, nor have any publicly held corporation owning 10% or more of its stock.

/s/ Uri Dallal_____
URI DALLAL
THE DALLAL FIRM, PC
2500 Plaza 5
Harborside Financial Center
Jersey City, NJ 08837
Tel:    732 650 1551
Fax:    347 514 9995
uri@dallalfirm.com

Attorneys for Plaintiff DGL Group, Ltd.

DATED:  September 23, 2014

23